UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LAWRENCE J. LUDWIG,**

      **Plaintiff,**

vs.                                        CASE NO. 8:03-cv-2378-T-17MSS

**LIBERTY MUTUAL FIRE**
**INSURANCE COMPANY,**

      **Defendant.**
_____/

## ORDER

**THIS CAUSE** is before for the Court for consideration of Plaintiff's Motion to Compel the Deposition of Marlene Igbo-Nwoke and to Compel More Complete Responses to Plaintiff's Request for Production of Documents (the "Motion to Compel") (Dkt. 45) and Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel. (Dkt. 49).

For the reasons that follow and in accordance with this Order, Plaintiff's Motion to Compel is **GRANTED**.

    A.    **Deposition of Ms. Marlene Igbo-Nwoke**

The Motion to Compel asks the Court to allow Plaintiff to take the Deposition of Ms. Marlene Igbo-Nwoke. Ms. Igbo-Nwoke was the Liberty Mutual Senor Claims Handler assigned to Plaintiff's underlying uninsured motorist case. Defendant objected claiming that Ms. Igbo-Nwoke should be protected from deposition. Defendant believes that because Plaintiff is "still attempting to claim damages for injuries directly related to the motor vehicle accident, which are damages that are the proper subject of the underlying UM [uninsured motorist] lawsuit, then discovery from Marlene Igbo-Nwoke as the Senior Claims Handler for Liberty Mutual regarding the Ludwig's claim, would be considered attorney-client or work product privilege information

1

regarding these claims." (Dkt. 6 at 2; see also, Dkt. 49 at 5 (wording the same objection differently)).

### B. Plaintiff's Request for Production of Documents

Plaintiff asks the Court to compel Defendant to provide documents responsive to requests made by Plaintiff in his Request for Production of Documents (served on Defendant as part of the state court proceeding). Specifically, Plaintiff seeks materials responsive to the following related discovery requests:

1. The entire claim file relating to the uninsured motorist claim for your insured, LAWRENCE LUDWIG, Claim No. AL508-151396-01.

3. The personnel file for the insurance adjustor who handled the file, Marlene Igbo Nwoke.

4. Any electronic notes, e-mails, journals or other documents retained in any computer or electronic system relating to the uninsured motorist claim file of LAWRENCE LUDWIG, Claim No. AL508-151396-01.

5. Any stored files including microfilm or any other technique of storing aged files relating to the uninsured motorist claim of LAWRENCE LUDWIG, Claim No. AL508-151396-01.

6. Any communications to and from the Defendant and Plaintiff reflecting any aspect of the insurance policy or the handling and adjusting of the uninsured motorist claim for LAWRENCE LUDWIG, Claim No. AL508-151396-01.

Defendant objected to Questions 1, 4-6 on the grounds that the requested materials are privileged and protected from production by the attorney work product doctrine and the attorney client privilege and cited to two cases in support of these objections, Allstate Insurance Company v. Melendez, 550 So.2d 156 (Fla. 5th DCA 1983), and Kujawa v. Manhattan National Life Insurance Company, 541 So.2d 1168 (Fla.1989). Defendant objected to Question 3 on the grounds that the requested materials are irrelevant and immaterial and not reasonably calculated to lead to the discovery of admissible evidence.

**Background**

On August 6, 1999, Plaintiff was injured in a collision between the bus he was driving and an automobile. (Dkt. 2 at 2). At the time of the accident, Plaintiff held a policy of uninsured motorist coverage with the Defendant with a total available benefit of $100,000. (Dkt. 2 at 2). Before commencing legal action against Defendant, Plaintiff made a demand on Defendant to tender the full amount of the policy. Defendant rejected this demand and instead offered Plaintiff $15,000.00. (Dkt. 2 at 2). Pursuant to Fl. Stat. § 624.155, on May 25, 2001, Plaintiff filed a "Civil Remedy Notice" (the "CRN") with the Florida Department of Insurance and the Defendant, with an effective date of May 30, 2001. (Dkt. 2, Ex. C). Fl. Stat. § 624.155 allows any person to bring a civil action against an insurer when such person is damaged by certain acts of the insurer. In this case, Plaintiff is proceeding under Fl. Stat. § 624.155(1)(b)(1), which allows Plaintiff to bring suit on grounds that the insurer did not attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward the insured and with due regard for her or his interests."

Pursuant to Fl. Stat. § 624.155(3)(a), Defendant had sixty (60) days from the CRN's effective date in which to cure its alleged bad faith. Defendant failed to avail itself of this opportunity to cure. (Dkt. 2 at 3). Upon expiration of the sixty days, Plaintiff filed suit against Defendant for uninsured motorist benefits in Pinellas County Circuit Court on July 31, 2001. (Dkt. 2 at 3). On April 7, 2003, Defendant filed a Proposal for Settlement tendering the amount of $100,000 to Plaintiff and Plaintiff's wife, which was accepted by Plaintiff through a filed Notice of Acceptance of Offer. (Dkt. 2, Exs. D and E). Subsequently, Plaintiff executed a release in favor of Defendant for the $100,000 uninsured motorist benefits (the "Release"); however, the Release was silent as to statutory liability under Fl. Stat. § 624.155. On May 28, 2003, Plaintiff filed a complaint against Defendant in the Circuit Court of the Sixth Judicial

3

Circuit in and for Pinellas County, Florida. (Dkt. 1). Plaintiff alleged in the complaint that Defendant breached its fiduciary duty to Plaintiff by failing to handle Plaintiff's claim with dispatch and due diligence and to achieve proper disposition thereof, and breached its duty to deal in good faith to settle Plaintiff's claim. (Dkt. 2 at 4). Plaintiff asserts that as a direct and proximate result of Defendant's violation of its duties under the law, Plaintiff has been damaged and has not received the full value for his injuries from the accident, interest on the damage value, attorney's fees, and interests and costs, all of which are allowable under Fl. Stat. § 627.727(10)(2001). (Dkt. 2 at 4). After filing an answer and a series of motions in state court, Defendant filed a Notice of Removal to this Court alleging complete diversity and an amount in controversy exceeding $75,000.00 under 28 U.S.C. § 1332(a)(2). (Dkt. 1). This case was removed from state court to this Court on November 13, 2003. (Dkt. 1).

Since removal of Plaintiff's case to this Court, the parties have each filed multiple motions. Pertinent to this Order is Defendant's Motion for Protective Order regarding the deposition of Marlene Igbo-Nwoke (Dkt. 6) in which Defendant claimed that the deposition was premature at this stage of the litigation and also, generally, asserted that:

> [B]ecause the Plaintiff is still attempting to claim damages for injuries directly related to the motor vehicle accident, which are damages that are the proper subject of an [uninsured motorist] lawsuit as was the underlying lawsuit regarding this matter, then discovery from Marlene Igbo-Nwoke, as the Senior Claims Handler for Liberty Mutual regarding the Ludwig's claim would be considered attorney-client or work product privilege information regarding these claims.

The Undersigned granted Defendant's Motion and stayed discovery of this witness "until such time as the Plaintiff files a motion to compel the discovery to go forward." (Dkt. 13 at 3). On February 16, 2005, Plaintiff filed its Motion to Compel, and Defendant filed a Motion to Bifurcate and/or Motion for Separate Trial (the "Motion to Bifurcate"). (Dkts. 45 and 46).

4

In support of the Motion to Compel, Plaintiff filed a Notice of Supplemental Authority (the "Notice") on May 16, 2005, making the Court aware of the recently decided Supreme Court of Florida case, Allstate v. Ruiz, 899 So.2d 1121 (Fla. 2005). Defendant filed a response to Plaintiff's Notice. (Dkts. 56 and 57). The Supreme Court of Florida announced in the beginning of its opinion in Ruiz:

> Because we conclude that there is clearly conflict and confusion in the application of discovery concepts in the case law, and particularly in the insurance bad faith context, we determine that we have jurisdiction in this case and that we should exercise our discretion to resolve the conflict. . . . It is our view that the conflict regarding whether the work product privilege attaches to material created when litigation is "substantial and imminent" as held in Ruiz, as opposed to when legal action is "merely foreseeable" as held in the conflict cases, in this context is an unnecessary and unfortunate outgrowth of the inappropriate distinctions with regard to discovery rules applicable to statutory first-party and third-party bad faith actions, whether statutory or common law, developed by Florida courts, and generated by interpretations of our decision in Kujuwa v. Manhattan National Life Insurance Co., 541 So. 2d 1168 (Fla. 1989). For the reasons set forth herein we . . . recede from our decision in Kujawa.

Ruiz at 1121.

The Supreme Court of Florida went on the state:

> A necessary prerequisite for any bad faith action is an underlying claim for coverage or benefits or any action for damages which the insured alleges was handled in bad faith by the insurer. It is precisely this two-tiered nature of bad faith actions that engenders the discovery battles so often waged in bad faith litigation . . . Allstate asserts that work product protection should extend to and envelop the entire claim file and all files, whatever the name, in the underlying coverage or damage matter in dispute, including any extension into bad faith litigation which may flow from the processing or litigating of the claim . . . As the insureds succinctly posit, how is one to ever determine whether an insurance company has processed, analyzed, or litigated a claim in a fair, forthright, and in good faith manner if access is totally denied to the underlying file materials that reflect how the matter was processed and contain the direct evidence of whether the claim was processed in "good" or "bad" faith?

Id. at 1124.

After undertaking an historical analysis of previous decisions regarding discovery issues that arise in bad faith insurance litigation, as well as a review of first-party and third-party bad faith actions initiated against an insurer, the Supreme Court of Florida concluded that any distinction between first- and third- party bad faith actions for discovery purposes is unjustified and without support and creates an "overly formalistic" distinction between substantively identical claims. Based on this conclusion, the Supreme Court of Florida held that the claims file in Ruiz, a first-party case, was producible and that:

> [I]n connection with evaluating the obligation to process claims in good faith under Section 624.155, all materials, including documents, memoranda, and letters, contained in the underlying claim and related litigation file that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability or damages, should also be produced in a first-party bad faith action. Further all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection.

Ruiz at 1129-1130.

Defendant responds that Ruiz is not applicable to this case because

1. Ruiz is based on a review of "issues concerning the application of work product privilege to shield documents from discovery in the insurance bad faith [context];"

2. Ruiz does not address or alter the applicability of attorney-client privilege to prevent production of materials or information protected under the attorney-client privilege; and,

3. Ruiz reinforces the understanding that the insurance company's claim file related to handling of the underlying lawsuit should not be produced until the underlying lawsuit has been completely resolved.

(Dkt. 57, pp.1-2).

On June 27, 2005, the District Judge denied Defendant's Motion to Bifurcate finding that there was no prejudice that would necessitate the separation or bifurcation of the claims. (Dkt.

58). The Court reached this decision, distinguishing the case *sub judice* from those cases in which liability for the underlying accident was unresolved.

In the Motion to Bifurcate, Defendant relied upon Blanchard v. State Farm Automobile Ins. Co., 575 So.2d 1289 (Fla. 1991), for the proposition that when a plaintiff attempts to claim injuries related to a motor vehicle accident and, in the same lawsuit, also seeks damages against his insurance company on bad faith grounds, the bad faith claim must be separated and delayed pending resolution of the plaintiff's claim for damages stemming from the accident. The Court distinguished Blanchard stating:

> This appears to be a situation stemming entirely from the Plaintiff's claim of bad faith by the Defendant; the Plaintiff does not appear to be claiming that, even though he settled for $100,000.00 (the maximum allowed under his policy), that the Plaintiff wants more money based on the policy terms themselves. In the Complaint, the Plaintiff states that "as a direct and proximate result of the insured's [sic] violation of their duties under the law, the Plaintiff has been damaged and has not received the full value for the injuries suffered in the accident, interest on the damage value, attorney's fees in the underlying suit, and interests and costs, and all damages permitted under Chapter 627.727(10), Florida Statutes (2001). . . Although the Plaintiff fails to specifically cite to the exact section of Fl. Stat. § 624.155, it appears that the Complaint specifically involves Fl. Stat. § 624.155(1)(b)(1), which allows for a civil remedy against an insurance company for "not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.
>
> . . . .
>
> Furthermore, in Blanchard, the insured had not resolved the issue of liability arising from the accident. Id. at 1291. Here, the parties have agreed to a settlement agreement for the maximum amount of uninsured motorist benefits allowable under the Plaintiff's policy with the Defendant. While the settlement agreement specifically states that the Defendant admits no liability, if the Defendant thought that grounds did not exist to pay the Plaintiff, it would not have done so; insurance companies are not in the business of paying those without valid claims.

(Dkt. 58, pp. 4-5).

**Discussion**

The Undersigned reviews the pending Motion to Compel constrained by the Court's prior decisions and controlling precedent. Specifically, on the basis of the foregoing, the District Judge has determined that the liability issues surrounding the underlying accident are resolved, which was Defendant's primary objection to the taking of the deposition of Ms. Igbo-Nwoke. The Undersigned reads the Court's Order on bifurcation (Dkt. 58) to hold that Plaintiff cannot seek additional damages related to his injuries, beyond that paid by the Defendant in settlement and, unlike the insured in Blanchard, the Defendant here has, by its settlement, resolved the issue of liability. (Id. at 5).

As noted above, Defendant claims that because Plaintiff is still attempting to claim damages for injuries directly related to the motor vehicle accident, which are damages that are the "proper subject of the uninsured motorist claim" then "discovery from Marlene Igbo-Nwoke regarding the [Plaintiff's] claim in this statutory bad faith action would be considered attorney-client or work product privilege information regarding these claims." (Dkt. 49 at 5).

Based on the previous ruling of the District Court, the liability issues surrounding the underlying accident are resolved and thus the primary basis for the objection no longer exists; however, both the attorney work product and attorney client objections raised by Defendant will be addressed in turn.

Despite Defendant's arguments to the contrary, Ruiz is persuasive in this case. In Ruiz, the Supreme Court of Florida recognized that discovery of the insurer's underlying claim file is permitted in third-party cases over the objections of "work product" protection and extended that right, holding that first-party Plaintiffs can now have the same access to underlying claims files, etc. that third-party bad faith claims Plaintiffs have historically enjoyed. Ruiz at 1128-1129. As noted above, in Ruiz the Supreme Court of Florida allowed discovery of all "materials,

8

including documents, memoranda, and letters, contained in the underlying claim and related litigation file that was created up to and including the date of resolution of the underlying disputed matter and pertain in any way to coverage, benefits, liability or damages." Ruiz at 1129-1130.  The Supreme Court of Florida also concluded that "all such materials prepared after the resolution of the underlying disputed matter and initiation of the bad faith action may be subject to production upon a showing of good cause or pursuant to an order of the court following an in-camera inspection."

Thus, the Undersigned concludes that in accordance with the holding in Ruiz, Defendant's claims of work product production will not stand as a bar in this bad faith lawsuit to block Plaintiff from access to all information from the claim file created up to and including the date of resolution of the underlying disputed matter.  By definition, this includes all of the materials and documents requested in Plaintiff's Questions 1, 4-6 in his Request for Production outlined above.  For clarification and to avoid future filings by the parties on this issue, the pertinent "date of resolution" of the underlying disputed matter is May 2, 2003, the date that the Court, based on the stipulation and agreement of the parties, entered an Order of Dismissal with Prejudice of the underlying lawsuit.  (See Dkt. 2, Ex. D). Materials contained in the file after the date of resolution are not the subject of this Motion to Compel and will be addressed, if necessary, at a later date after appropriate filings by the parties.

In addition, the "work product claim" will not bar Plaintiff's deposition of Ms. Igbo-Nwoke.  While the Ruiz case specifically addressed access to materials contained in the insurer's underlying claim and litigation file, it stands to reason that the person primarily responsible for compiling such information can be deposed regarding it.

Defendant is then left with its claim that it does not have to produce Ms. Igbo-Nwoke for deposition or to produce requested documents because of "attorney client privilege."  Under

9

Florida law, information is protected from disclosure by the attorney-client privilege when it is a communication between a lawyer and client not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal service, or those reasonably necessary for the transmission of the communication. Fl. Stat. § 90.502(1)(c)). The attorney-client privilege extends to agents and representatives of the attorney when disclosure is in furtherance of the rendition of legal services, or when disclosure is reasonably necessary for the transmission of the communication. Fl. Stat. § 90.502(c)(1)-(2). The party invoking the privilege has the burden of proving its existence. In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1225 (11th Cir. 1989).

Throughout this litigation, Defendant has stated only very generally that attorney-client privilege is applicable and instead focused its efforts on convincing the Court that "no materials or information should be produced until the underlying claim for benefits has been resolved . . . [t]his would pertain both to any deposition testimony of Ms. Marlene Igbo-Nwoke or production of those documents at issue related to Plaintiff's Request for Production of Documents." (Dkt. 57 at 4). However, when Defendant served its Response to Plaintiff's Request for Production of Documents on February 7, 2005. (Dkt. 49, Ex. A), it provided a privilege log to Plaintiff that includes attorney-client privilege objections as to Questions nos. 1, 4-6. This log has not been provided to the Undersigned. Plaintiff does not seem to be objecting to Defendant's assertion that attorney-client privilege protected the documents and information at issue at one time; however, the issue now is whether the attorney-client privilege has been waived in this case through Defendant's use of the "advice of counsel" defense.

Restatement (Third) of the Law Governing Lawyers § 80, reads in relevant part that:

> The attorney-client privilege is waived for any relevant communication if the client asserts as to a material issue in the proceeding that:

> (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 80 (2000).

In this case, the Restatement "test" may have been satisfied - Plaintiff has filed a bad faith claim against Defendant and in defense of the bad faith claim, Defendant may be relying on the information and advice of counsel as imparted to its adjustor and other claims representatives. For example, Defendant's Eight Affirmative Defense provided in its Amended Answer (Dkt. 59) reads as follows:

> This Defendant further alleges that at all times material hereto, [Defendant] acted in good faith in attempting to evaluate and settle the claim with respect to its insured . . . and **acted fairly and honestly toward its insured and with due regard to his interests, and did not violate the provisions of Section 624.155, Florida Statutes**.

(Dkt. 59 at 7) (emphasis added).

"It is generally acknowledged that a party cannot force an insurer to waive the protections of attorney-client privilege merely by bringing a bad faith claim." See Tackett v. State Farm Fire and Casualty Insurance Company, 653 A.2d 254 (1995)(internal citations omitted); see also, Lee v. Progressive Express Insurance Company, 2005 WL 2016904, *1 (Aug. 24, 3005) (stating that "[g]enerally, the attorney-client privilege is not waived by bringing or defending a lawsuit"). Tackett goes on to read, however, that where "an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party an opportunity to uncover the foundation for those assertions in order to contradict them." Id.; see also, Lee at *1 (stating that if proof of the claim would require evidence of the privileged matter, the privileged matter is discoverable).

11

Defendant asserts that it handled Plaintiff's claim fairly, honestly and in good faith, and claimed that it did not violate the provisions of Fl. Stat. § 624.155. Defendant's evaluation of the claim and decisions made in regard to the claim may, of course, have been informed by advice of counsel. To the extent that Defendant is relying on that "advice of counsel," directly or by inference, any claimed attorney-privilege covering documents and information contained in the claim file as it relates to periods predating the resolution of the claim and related to the evaluation of the claim would be deemed waived.

Accordingly, "blanket assertion" of attorney-client privilege will not stand as an automatic bar to Plaintiff's access to the documents requested by Plaintiff in Question Nos. 1, 4-6. Defendant must schedule Ms. Igbo-Nwoke's deposition. Defendant shall review the documents in its privilege log to determine whether any privilege can still be claimed in light of its planned or disclosed defense. Further, during Ms. Igbo-Nwoke's deposition, she may invoke the attorney-client privilege in response those questions warranting such a response; however, Defendant is cautioned that to the extent that Ms. Igbo-Nwoke's coverage decisions were informed by consultation with counsel either directly or through prepared memoranda, it will be difficult for Defendant to sustain the privilege objection. Defendant is further reminded that a party who improvidently directs a party not to answer a question on grounds of privilege may be ordered to pay the cost and fees of any reconvened deposition that may be required.

Finally, there remains the question of Plaintiff's request for access to the "personnel file for the insurance adjustor who handled the file, Marlene Igbo Nwoke" as set out in Question No. 3 of its Request for Production. Plaintiff argues that it should have access to Ms. Igbo-Nwoke's personnel file because it will contain information regarding how Defendant viewed Ms. Igbo-Nwoke's handling of other claims for which she was responsible. Defendant claims that the

information in Ms. Igbo-Nwoke's personnel file is irrelevant and immaterial and not likely to lead to the discovery of admissible evidence.

The Court concludes that neither party is entirely correct on this point. Plaintiff's demand is too broad, and Defendant's response is too narrow. How Defendant's agent, Ms. Igbo-Nwoke, handled Plaintiff's claim and other claims is material and relevant to Plaintiff's case, and thus, Plaintiff is entitled to have some access to Ms. Igbo-Nwoke's personnel file as requested in Question No. 3 of Plaintiff's Request for Production, to the extent that there is any relevant information contained therein. Plaintiff may obtain discovery that reveals the length of time Ms. Igbo-Nwoke has been an adjustor, information, if any, in her personal file related to the case at issue and her handling of the claim, any reprimand in her file regarding her prior handling of a claim, and any commendation or award regarding her successful resolution of a claim on behalf of and to the benefit of the insurer. No further information in the personnel file must be produced.

## Conclusion

For the reasons cited above, Plaintiff's Motion to Compel (Dkt. 45) is **GRANTED** in accordance with the parameters outlined above. Defendant shall have twenty (20) days from the date of this Order to produce the materials requested by Plaintiff and the parties shall as

expeditiously as possible schedule the deposition of Ms. Marlene Igbo-Nwoke at a mutually convenient time and after Plaintiff has had the opportunity to review the materials provided by Defendant.

**DONE and ORDERED** in Tampa, Florida on this 28th day of September 2005.

_____
MARY S. SCRIVEN
United States Magistrate Judge